UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| John Kotsopoulos and Joanna Kotsopoulos, )<br>)<br>Plaintiffs, )<br>)<br>-vs- )<br>)<br>Mortgage Electronic Registration Systems, )<br>Inc. and JP Morgan Chase Bank, N.A. for )<br>GMAC Mortgage Corporation, )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 4:06-1106-TLW-TER<br><br><br>REPORT AND<br>RECOMMENDATION |

This matter is before the court on several outstanding motions, including:

1. JP Morgan Chase Bank, N.A.'s (JP Morgan) motion to dismiss (Document # 5) filed April 20, 2006;

2. GMAC Mortgage Corporation's (GMAC) motion to dismiss (Document # 12) filed May 17, 2006;

3. Mortgage Electronic Registration System, Inc.'s (MERS) motion for summary judgment (Document # 18) filed June 12, 2006;

4. Plaintiffs' motion to amend (Document # 27) filed August 29, 2006.

This action was removed from state court based on diversity jurisdiction and federal question jurisdiction. Plaintiffs filed their original complaint in the Court of Common Pleas, Horry County, South Carolina on or about March 9, 2006. After the defendants filed dispositive motions, plaintiffs filed the above-referenced motion to amend their complaint. Plaintiffs attach a proposed amended complaint which is similar to the original complaint but proposes to add two additional defendants, GreenPoint Mortgage Funding, Inc., (Greenpoint) and MERSCORP, Inc., and some general conspiracy language to include each named and proposed defendant. The allegations contained in

-1-

the proposed amended complaint are summarized below.

Plaintiffs allege they entered into a note and mortgage agreement on November 30, 2001, with Greenpoint, but that the agreements are invalid for lack of consideration, misrepresentation and violations of the Racketeer Influenced and Corrupt Corporations Act (RICO), 18 U.S.C. §1962, et seq. (¶1).

They allege that MERS is not mentioned in the promissory note but is referenced in the mortgage as a "separate corporation that is acting solely as a nominee for [Greenpoint] . . . MERS is the mortgagee under this Security Instrument." (¶¶4,5)

They allege that on April 13, 2005, MERS filed a foreclosure action against them seeking a deficiency judgment. (¶6) They allege that the complaint was not verified. (¶ 9). They allege that the MERS' complaint contains false allegations that MERS was the holder of the note and mortgage while MERS had knowledge that the note and mortgage was sold to JP Morgan for GMAC on or around May 2002. (¶12).   They allege the complaint also contains false allegations that MERS advanced money to plaintiffs while the mortgage represents GreenPoint as the lender and that MERS was merely the nominee for GreenPoint.  (¶12).

They allege that just prior to the foreclosure sale, MERS, through their attorneys, filed a "waiver of deficiency" knowing that they would be the only persons present at the foreclosure sale. (¶7).  They allege that MERS' attorneys sat at the foreclosure sale and allowed the judge to "misrepresent" that MERS was seeking a deficiency in the foreclosure sale. (¶8). They further allege that MERS' attorneys purchased the property at the foreclosure sale.  (¶10).

They allege that they were never served with the complaint in the foreclosure action.  (¶17). They allege that, ironically, they were in their attorney's office several hours prior to the foreclosure

hearing on April 13, 2005, and through a telephone call their attorney learned of the pending foreclosure hearing. (¶¶13-15). They allege their attorney contacted MERS' attorneys and requested "proof of service" of the complaint. (¶16). They allege MERS' attorneys sent an affidavit of service which named CitiMortgage as the plaintiff in the action. (¶17). They allege, therefore, there was no proper service upon them. (¶17). They allege that they had no knowledge that a judgment was entered against them and that the judgment was obtained through coercion and fraud upon the state court. (¶13).

They allege MERS' attorneys falsely represented to the state court that they sought a swift foreclosure because MERS's equity position was being eroded as a result of the increasing losses from accruing interest. (¶18).

They allege that MERS was not the "holder in due course" of the mortgage, and that MERS, through their attorneys, committed fraud on the state court by obtaining judgment when their was no proper service of process and that the collusion and conspiracy was violative of RICO. (¶20).

They allege that MERS and "other named co-conspirators" continually and repeatedly engage in such conduct - foreclosing when they have no legal interest in the property. (¶21).

They allege that the underlying judgment of foreclosure was not based upon supporting facts, there was no evidence showing a transfer of the mortgage and that the only evidence presented was the statements of counsel. (¶¶22-25).

They allege that MERS and "all other named parties" were involved in the conspiracy in violation of RICO. (¶26).

They allege that many clerks of court in various states and counties refuse to accept for filing documents for MERS reflecting MERS as the mortgagee. (¶27)

They allege that the named defendants have aided and abetted MERS in extorting money and property and that they have doubts as to how these mortgages were originated by GreenPoint simply as "bookkeeping entries" which they will reveal through discovery.    (¶28).  They allege that GreenPoint and other defendants, because they are stockholders of MERS, knew or should have known of MERS' schemes and scams. (¶29).

They allege they have doubts as to who was the actual "lender" and "borrower" of the note and mortgage. (¶30).  They further allege that they question whether or not MERS incurred financial loss or actual damages or had lawful right to be involved in the note and mortgage, foreclosure action.  (¶31).

Count One (¶¶33-56)

They allege defendants conspired to extort, mislead, misrepresent and cause harm to plaintiffs.  MERS had no legal or equitable interest in the note and mortgage, their was insufficient factual support for the state court foreclosure, and the note and mortgage were without consideration, unenforceable, null and void.

MERS' actions are violative of the South Carolina Unfair Trade Practices Act, §39-5-20, et seq., and the Fair Debt Collection Practices Act (falsely represented MERS as the creditor to whom the debt was owed).

Count 2 (§§57-59)

In fraudulently foreclosing on plaintiffs' property, defendants have committed violations of 18 U.S.C. §1341 (mail fraud) and RICO.

Count 3 (§§60-62)

They allege defendants breached the loan agreement, did not provide valuable consideration

-4-

and violated the usury laws and RICO.

Plaintiffs seek the following relief:

1. Empanel a grand jury to investigate this possible racketeering activities;

2. Vacate the state court judgement of foreclosure;

3. Actual damages in the amount of approximately $100,000.

4. Declaratory relief declaring defendants' actions to be fraudulent and their acts to be null and void.

5. Injunction against defendants to prohibit their continuing behavior;

6. Exemplary damages, costs, fees and other appropriate relief; and

7. Punitive damages.

Defendant JP Morgan files its motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P.  It asserts the allegations in the original complaint alleged only that the note and mortgage "was sold by JP Morgan Chase Bank, N.A. for GMAC Mortgage Corporation since, on or around May of 2002, as evidenced herein by Exhibit "B" [attached]".  Exhibit "B" attached to the original complaint is the complaint in the foreclosure action and does not reference or in anyway identify JP Morgan. The complaint also identifies JP Morgan as a shareholder of MERS.

JP Morgan asserts that assuming the allegations of the complaint are true, the complaint does not allege a cause of action against it.  It asserts that the allegations do not state circumstances warranting piercing the corporate veil.

Alternatively, JP Morgan asserts that it is entitled to summary judgment because there is no genuine issue of fact that it had any direct business relationship with the plaintiffs or the note or mortgage. Attached to its motion, defendant presents the affidavit of Michael T. Gaughan, the Legal Liaison in the Default Resolution Unit, who attests he has performed an exhaustive search of JP

Morgan's database and records which failed to reveal any accounts, including checking, savings, credit card, and mortgage accounts, or loans, including those in default status, relating to John or Joanna Kotsopoulos, 904 Plantation Drive, Myrtle Beach, South Carolina, or the loan number identified in the complaint. He further attests that JP Morgan never had an interest in the mortgage, it did not originate the mortgage and did not formally service the loan, including never having received payments on the loan.

GMAC filed its motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. GMAC asserts that paragraph nine of the complaint alleges the note and mortgage "was sold to JP Morgan Chase Bank, N.A. for GMAC Mortgage Corporation since, on around May of 2002, as evidenced herein by Exhibit 'B' [attached]." Again, "Exhibit B" is the complaint in the foreclosure action and does not reference GMAC. Exhibit "G" to plaintiff's complaint is a letter to John Kotsopoulos from GreenPoint, the originator of the mortgage. The letter explains that the servicing of the mortgage loan was transferred to GMAC effective July 1, 2002. It asserts that the allegations of the complaint do not address malfeasance in the servicing of the loan. Therefore, it asserts that the allegations of the complaint fail to state a claim upon which relief could be awarded against GMAC.

GMAC also asserts the remainder of the complaint addresses MERS' foreclosure action and the mortgage lending business and only indirectly refers to GMAC except that it alleges GMAC is a shareholder of MERS, and that the complaint does not allege circumstances which would warrant piercing the corporate veil.

Plaintiff filed their opposition to JP Morgan's and GMAC's motions on August 15, 2006. They assert that the amended complaint asserts a conspiracy against the plaintiffs. They assert that they entered into a note and mortgage with GreenPoint on November 30, 2001. They assert that the

defendants are parties of GreenPoint, a "fiction" corporation. They assert that they received a written notice stating JP Morgan for GMAC would be servicing their mortgage effective June 17, 2002. However, they also assert that they were not provided with "Proper Service or Disclosure of material facts, which would indicate [JP Morgan] was involved in this matter" until the foreclosure action. They assert that GMAC, therefore, represented that it had rights to collect monies and instruct MERS to initiate foreclosure proceedings, but now that they are in litigation they claim not to be a party to the fraud. They assert that MERS was "created by a group of banks and mortgage companies, all of which are stockholders/owners in MERS solely to use the name MERS to cover for their continual exchanges in negotiable instrument exchanges to attempt to escape proper disclosures and lawful documentations such as attachment of allonges and assignment agreements." They assert GMAC was involved in their capacity as the "servicing" agent and as a stockholder of MERS.

Plaintiffs assert that a corporate veil can be pierced when fraud is involved. They also make a vague reference to "Title 18 USC 'Anti-Trust Regulations of Conspiracy."

In their "conclusion" paragraphs, plaintiffs argue as follows:

> Defendants have alleged various forms of immunity, including judicial, prosecutorial and qualified immunity. Plaintiff[s] have brought suit against the Defendant[s] in their corporate capacities, as well as, primary individual capacities [as soon as proper discovery evidences the key persons involved in the origination of MERS], since all defendants have acted in complete lack of jurisdiction and in concert, 1. To create and orchestrate an organization, which decieves and steals victims real properties under the color of presumed laws which are not a matter derived from Legislature. 2. To continue to "act as a nominee" in some foreclosure cases and as the "ortgagee" in others, on a basis of various UCC rules, which have been rejected in may (sic) lawful courts due to the facts that "holder of a note in due course" cannot be "too closely ssociated."
> The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff

by a commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." This is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally constructed to effect the Congressional purpose as broadly formulated in the statute. Sedima, SPRL v. Imrex Co., 473 U.S. 479 (1985).

On September 18, 2006, defendants filed their opposition to plaintiffs' motion to amend. Defendant argue that plaintiffs' motion should be denied because (1) it was filed outside the deadline set forth in the scheduling order for amending pleadings and (2) amendment would be futile.[1]

MERS files its motion pursuant to Rule 56, Fed.R.Civ.P. MERS recites various provisions of plaintiffs' complaint. It also states that plaintiffs filed a voluntary petition in bankruptcy after June 6, 2005, which was dismissed on December 15, 2005, because plaintiffs failed to meet certain basic administrative requirements. It states that the mortgaged property was sold at foreclosure sale (public auction) on March 6, 2006, and plaintiff filed this claim on March 8, 2006.

MERS asserts that plaintiff is foreclosed from bringing this action because it is barred by *res judicata*.

Plaintiffs filed their motion "to strike and opposition" to MERS' motion for summary judgment. Plaintiffs do not address the applicability of *res judicata* but state summary judgment should not be entered because:

No law exists "to allow 'one Corporation' to act in the position to represent 'another Corporation' in any 'lawful' court action." (In other words, they argue that MERS was not a proper party to the

---

[1] The original scheduling order in this action was entered on April 21, 2006, establishing a deadline of June 6, 2006 to amend pleadings and a deadline of December 22, 2006 to complete discovery. A Consent Amended Scheduling Order was entered June 1, 2006, extending the amendment of pleadings deadline until August 7, 2006, and the discovery deadline until February 20, 2007. As set forth above, plaintiffs' motion to amend was filed August 29, 2006.

-8-

foreclosure action.)

The MERS' attorneys in the foreclosure action are trying to escape liability by allowing another law firm to represent MERS in this action.

The corporate officers, employees and other parties can be individually liable even if the acts are committed in furtherance of a corporation's business.

JP Morgan the original "creator/shareholder" of MERS should not be able to escape liability by their association with the Federal Reserve System.

Discovery is ongoing and other claims may exist.

Plaintiffs assert that at least one issue of material fact exists. They assert that they "do not dispute having benefitted from the services provided by the Defendant[s] and it is true that the Plaintiff[s] have paid for this service with fees and interest over the life of this disputed account. The genuine issue of material fact remaining in dispute is that the Defendant[s] lent nothing when the disputed account was opened. A typical accounting record for a loan account would show money debited from the lender's account and credited to the borrower's. In this case, the defendant[s] cannot provide proof that any account was debited when the plaintiff's account was credited or opened."

They assert that defendants have not established themselves as a lender or holder in due course and the defendant has failed to establish or disclose the source of the funds purportedly loaned to the defendant, thus, they have failed to establish that they loaned anything.

Defendants JP Morgan and GMAC bring their motions to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. A motion to dismiss under Rule 12 tests the sufficiency of the complaint. It does not resolve conflicts of facts. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. It does not resolve

conflicts of facts, the merits of the claim, or the applicability of defenses asserted. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the factual allegation in the complaint are accepted as true and the plaintiff is afforded the benefit of all reasonable inferences that can be drawn from those allegations. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130,1134 (4th Cir. 1993).

Defendant MERS and JP Morgan and GMAC, alternatively, seek summary judgment pursuant to Rule 56. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply

at a trial on the merits." <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." <u>See also Celetex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)(Rule 56(c) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." <u>Celetex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). <u>See also Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

It is noted that plaintiffs are proceeding *pro se*. A *pro se* litigant's pleadings are accorded a liberal construction. <u>Hughes v. Rowe</u>, 449 U.S. 5, 66 L.Ed. 163, 101 S.Ct. 173 (1980); <u>Haines v. Kerner</u>, 404 U.S. 519, 30 L.Ed.2d 652, 97 S.Ct. 594 (1972); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. <u>Hughes v. Rowe</u>, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). The mandated liberal construction means only that if the court can reasonably read the pleadings to state a claim on which plaintiff could prevail, it should do so. <u>Barnett v. Hargett</u>, 174 F.3d 1128 (10th Cir. 1999). A court may not rewrite pleadings to include claims that were never presented.; <u>Barnett v. Hargett</u>, 174 F.3d 1128, 1133 (10th Cir. 1999), construct

a plaintiff's legal arguments for him, <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir. 1993), or "conjure

up questions never squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir.

1985), <u>cert. denied</u>, 475 U.S. 1088 (1986).

Because the plaintiffs are proceeding *pro se*, they were advised on or about April 21, 2006,

May 18, 2006, and June 13, 2006, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975),

that a failure to adequately respond[2] to the defendants' motions could result in dismissal of their case.

As set forth MERS argues plaintiffs' claims against it should be dismissed based on the

doctrine of *res judicata*. Plaintiffs do not address the applicability of *res judicata* to their claims.

"Res judicata is applied to prevent the re-litigation of claims, and thus prevent the unsettling

of a prior judgement, whether by increasing or decreasing the award or by reversing the result."

<u>Heckert v. Dotson</u>, 272 F.3d 253, at 258 (4th Cir. 2001). As stated by the Fourth Circuit,

> Under the res judicata principles, a prior judgement between the same parties can
> preclude subsequent litigation on those matters actually and necessarily resolved in
> the first adjudication. The doctrine of res judicata encompasses two concepts: 1)
> claim preclusion and 2) issue preclusion, or collateral estoppel. The rules of claim
> preclusion provide that if the later litigation arises from the same cause of action as
> the first, then the judgement in the prior action bars litigation 'not only of every
> matter actually adjudicated in the earlier case, but also of every claim that might have
> been presented.' However issue preclusion is more narrowly drawn and applies
> when the later litigation arises from a different cause of action between the same
> parties. Issue preclusion operates to bar subsequent litigation of those legal and
> factual issues common to both actions that were 'actually and necessarily determined
> by a court of competent jurisdiction in the first litigation.' Thus, while issue
> preclusion applies only when an issue has been actually litigated, claim preclusion
> requires only a valid and final judgement."

---

[2] The order states that failure "to respond adequately, the motion may be granted, thereby
ending the case. Careful attention should be given to the requirements of Rule 56(e) concerning
the necessity for affidavits . . . to be based upon personal knowledge, to contain facts admissible
in evidence, and to be executed by a person who would be competent to testify as to matter
contained in the affidavit if he or she was called to the witness stand . . . . submission of a brief . .
. will not be sufficient alone to withstand a properly supported motion for summary judgment."

Orca Yachts, L.L.C. v. Mollicam, Incorporated, 287 F.3d 316, at 318 (4th Cir. 2002)(internal citations omitted).

Claim preclusion bars the relitigation of claims that were raised or could have been raised in prior litigation. It, however, does not apply to all claims that were raised or could have been raised in the prior litigation. Claims are barred "only when three elements are satisfied: 1) the prior judgement was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." The Pittston Co. v. United States, 199 F.3d 694, at 704 (4th Cir. 1999) (internal citations omitted).

The Fourth Circuit has held that the appropriate inquiry to determine whether causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation "arises out of the same transaction or series of transactions as the claim resolved by the prior judgement." The Pittston Company, at 704 (internal citation omitted). "The expression 'transaction' in the claim preclusion context 'connotes a natural grouping or common nucleus of operative facts.' " Id.

In their responses to defendants' motions, plaintiffs argue that an issue of fact exist as to whether or not MERS was a "holder in due course" and whether MERS actually loaned money to plaintiffs. These issues are directly and inextricably linked to the validity of the underlying judgment of foreclosure issued by the Court of Common Pleas in Horry County. Clearly, and as set forth in their claim for relief, plaintiffs seek to vacate the state court judgment of foreclosure. While MERS'

-13-

argument that plaintiffs' action is foreclosed by the principles of *res judicata* may be correct, it is not necessary to reach that issue. This case should be dismissed based on the *Rooker-Feldman* doctrine as espoused in Rooker v. Fidelity Trust Company, 263 U.S. 413 (1923).[3]  *Rooker-Feldman* prohibits lower federal courts from reviewing the findings or rulings of state court decisions. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Friedman's, Inc. V. Dunlap, 290 F.3d 191 (4th Cir. 2002). As set forth by the Fourth Circuit, "[t]he *Rooker-Feldman* bar extends not only to issues actually decided by a state court but also to those that are 'inextricably intertwined with questions ruled upon by a state court.'" Shooting Point, LLC v. Cumming, 368 F.3d 379, 383 (4th Cir. 2004). Accordingly, plaintiffs' claims against MERS should be dismissed.

To recover under the South Carolina Unfair Trade Practices Act, a plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive acts. S.C. Code §39-5-10, et seq. §39-5-140(a) creates a private right of action in favor of "[a]ny party who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by §39-5-20 . . ." Under the UTPA, plaintiff may recover actual damages. Global Prot. Corp. V. Halbersberg, 503 S.E.2d 483,488 (S.C. Ct. App. 1998). "Actual damages under the UTPA include special or consequential damages that are a natural and proximate result of deceptive conduct." Id.(internal citation omitted).

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq "is designed

---

[3] Because *Rooker-Feldman* is jurisdictional, it may be raised by the court *sua sponte.* Friedman's, Inc. V. Dunlap, 290 F.3d 191 (4th Cir. 2002).

-14-

to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage. 15 U.S.C. § 1692(e)" Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1054 (8th Cir.2002). The Act prohibits, inter alia, "the use or threat of violence, obscene language, publication of shame lists, and harassing or anonymous telephone calls. 15 U.S.C. § 1692d." Id. "Debt collectors cannot use false, deceptive, misleading, unfair or unconscionable means to collect or attempt to collect a debt." Id. (citing 15 U.S.C. §§ 1692e, 1692f).

A RICO plaintiff must prove (1) a violation of the act and (2) injury as a result of the violation. To prove a violation of RICO, a plaintiff must prove that defendant ( a "person") (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. It appears that plaintiff in the present case assert that the racketeering activity involves mail fraud. Thus, the particularity requirements of Rule 9(b), Fed.R.Civ.P., would apply.

Giving plaintiffs all reasonable inferences, they claim that MERS and the other defendants and proposed defendants engaged in a scheme whereby MERS would, in essence, act as a universal agent in the mortgage lending and servicing business and incorrectly represented it maintained an interest in the note and mortgage as a creditor. Nowhere in the complaint or in plaintiffs' responses to the motions filed by the defendants do plaintiffs specify a particular, viable claim against a defendant. Other than submitting evidence that "servicing" the loan was transferred from GreenPoint to GMAC in June of 2002 and a notice in November 2004 pursuant to the Fair Debt Collection Practices Act indicated MERS as the creditor, plaintiffs only offer their own conclusory allegations. Accordingly, defendants are entitled to relief under Rule 12 and, alternatively, Rule 56.

-15-

In other words, plaintiffs complaint fails to state sufficient facts upon which relief could be granted. Additionally, assuming, *arguendo*, plaintiffs' claims survive Rule 12, plaintiffs, by affidavits or otherwise, fail to set forth specific facts showing a genuine issue for trial. Accordingly, defendants' motions should be granted.

Additionally, for the same reasons, plaintiffs' motion to amend should be denied as futile. Rule 15(a), Fed. R. Civil P, provides that leave to amend a complaint should be "freely given when justice so requires." However, the law is well-settled that leave to amend a pleading should denied when the amendment would futile. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)(citing Foman v. Davis, 371 U.S. 178(1962) and quoting Johnson v. Oroweat Foods Co., 785 F. 2d 503,309 (4th Cir. 1986)). Because granting plaintiffs' motion to amend would be futile, it should be denied.[4]

For the foregoing reasons, it is recommended that defendants' motions (Documents # 5, 12, 18) be granted, plaintiffs' motion to amend (Document # 27) be denied, and this case dismissed.

February 20, 2007                             s/Thomas E. Rogers, III
Florence, South Carolina                      Thomas E. Rogers, III
                                              United States Magistrate Judge

**The parties' attention is directed to the important notice contained on the following page(s).**

---

[4] Also, plaintiffs have failed to initially meet the "good cause" standard contained in Rule 16(b), *See* Dilmar Oil Co., Inc. V. Federated Mt. Ins. Co., 986 F.Supp. 959 (D.S.C. 1997)(party must satisfy good cause standard of Rule 16(b) before addressing merits under Rule 15(a)), and their motion should be denied for this reason as well.